Good morning, Your Honors. May it please the Court, Elizabeth Barros, Federal Defenders, on behalf of Mr. Gibbs. In this case, the District Court revoked Mr. Gibbs' supervised release and imposed a statutory maximum sentence of two years without ever mentioning the factors set forth in 18 U.S.C. § 3553, 18 U.S.C. § 3583E, or the Advisory Guideline Range in Chapter 7 of the Sentencing Guidelines. In doing so, the Court imposed a sentence that was both illegal and unreasonable, and also failed to provide specific reasons, as required by the statute, why a sentence outside of the guideline range was appropriate in this case. This is a case where he knew Mr. Gibbs pretty well, I think. And he said, you know, you've had chance after chance after chance, and we've come to the end. Well, I would disagree with the statement that he knew him pretty well, because this was actually the first time Mr. Gibbs had appeared before him since 2002, the time of his original sentencing. But in any event, all the District Court really said was, you've had too many chances, I don't think you'll cooperate. And the Court didn't do what it's statutorily required to do, which is consider the guideline range and go through the factors in § 3553A, at least the ones that are referenced by § 3583E. And this Court has previously stated, in both United States v. George and United States v. Tadeo, the Court has held that in determining an appropriate sentence upon revocation of supervised release, the Court must consider the Chapter 7 policy statements. And the Court didn't do that here. The Court, this Court has also stated that the failure to do so constitutes an abuse of discretion by the District Court. The Court didn't do that, and for that reason, alone this case should be reversed and remanded, at least for a resentencing. As this Court also noted in McBell, a District Court is required to consider the factors set forth in § 3583E, which incorporate, by reference, the majority of the factors in § 3553A. Again, in this case, the Court didn't do that and never on the record even referred to the factors it was supposed to take into consideration in imposing a sentence. And again, in McBell, this Court … What factors do you think might have made a difference? Well, I think, first of all, had the Court really looked at his history and characteristics, the person as a whole, that may have made a difference. In this case, the probation officer had initially recommended a sentence of 11 months, which was mid-range of the advisory guideline range, but actually backed off of that recommendation at sentencing and encouraged residential drug treatment as had been urged by the defense at the time of sentencing. The probation officer noted that Mr. Gibbs had been cooperative, had actually self-surrendered to the marshals when he learned that a warrant was out. A psychologist submitted a letter on behalf of Mr. Gibbs indicating that what he needed was treatment, and so one of the other factors, apart from his history and characteristics, the fact that he had been trying, had actually been cooperating, and had reached out for help. The violation was actually that he had been terminated from the CCC, which is like a halfway house, which is a condition he had requested because he realized he was relapsing and needed help and had been asking for individual counseling instead of group counseling because he needed more attention, and that's actually in the record, in the supplemental excerpt of record, in the modification. So I think had the court looked at the need for rehabilitation, which was urged by probation and by the defense, that would have been important for the court to look at, and it really didn't go through that in this case, nor acknowledge that it had the responsibility to do that. And for those reasons, as the court noted in McBell, the failure to consider the factors in 3583E and 3553A contravenes the statute, and for that reason, as well, the sentence should be reversed in this case. I would also urge the court to find that the sentence in this case was unreasonable for those very reasons. As Judge Wardlaw noted in her concurring and dissenting opinion in Ameline, the court, this court, should review the procedures employed in determining whether a sentence is reasonable and a sentence may be unreasonable when the court fails to consider the guidelines or the other factors listed. And I believe Judge Wardlaw's approach has been adopted by this court subsequently in cases like Diaz-Argueda and Cantrell. In those cases, the court indicated that the guidelines are a starting point. They need to be properly calculated. So there are certain procedures that need to be employed, or the sentence will be found unreasonable. In McBell, this court explicitly stated that a sentence would be unreasonable if the court, the district court, failed to consider the factors in 3553A. And like I've said, I believe the sentence in this case was unreasonable because that just wasn't done here. And the court also failed to provide specific reasons, as it's required to do by statute. In McBell, the court actually, this court reversed the sentence where the court considered the guidelines on the record and found the guidelines were insufficient, but failed to explain why the particular above-guideline sentence that it chose was appropriate. And so we have an even worse situation here where the court never even referenced the guidelines at all. And, Your Honor, with that, I reserve the remainder of my time. You may do that. Mr. Alexander? Good morning. May it please the Court, Christopher Alexander for the United States. Your Honor, this appellate issue raises three separate issues. The first issue is whether the defendant's admission before the district court judge was voluntary. The second deals with whether the sentence in this case was proper. And the third issue is whether this matter should be remanded to the same district court judge, if it is remanded at all. Regarding the first issue, since it appears there wasn't much argument regarding the voluntariness of the admission, I'll be relatively brief. The defendant, in this instance, was told on prior occasions and had actually modified his terms of supervised release on two prior occasions, at which point he was advised that he had an opportunity to have a hearing, and he elected to waive that hearing. How much should we impute his knowledge from past experiences of this situation, and is the modification, would information about what happens at a modification necessarily translate in his mind to what would happen in regard to revocation? Yes, Your Honor, and I think we would go back even further than that regarding his experience. The defendant here is a criminalist category of six. It's not his first go-around with the criminal justice system. He's well aware of what his rights are regarding this. How many times has he had revocation hearings, though, in that history, if you know? Well, as far as revocation hearings for supervised release on a federal offense, as far as I know, this is his first appearance. Well, if that's true, why should we impute to him the sophistication that he would understand that procedures that might apply at a trial or might apply when conditions are being revised or might apply in state court? I mean, a lawyer would look that up. Why would we expect the defendant to just know that? Well, he'd certainly, he was certainly advised that he did have a right to a hearing, and as far as what the additional rights are at that hearing, Magistrate Judge Pappas explained to the defendant that he would have an opportunity to present evidence or at least have a hearing on that issue. He said he'd have a hearing and that the government would have to prove that there should be revocation. They didn't say anything about whether he could put on evidence. That's correct, Your Honor. The Magistrate Judge did not go specifically through that information. However, at the time... Was there any information that he was ever told that he could cross-examine, that he had the right to present documents and other evidence? Where is there anything in this case that he was ever told that or that he knew it? There is nothing. Well, if there's nothing, how can we guess it? I mean, if you go back to our prior cases, like Stark's, Stark's, something like that... Correct. ...said he was complaining about his, he didn't, wasn't told about his right to counsel, and they said you were told previously about your right to counsel at the hearing, and therefore that's enough. Where was he told about these rights? I think you said there's any indication in that history that he's ever been told that he had the right to present documents and witnesses and or cross-examine evidence? Well, Your Honor, I think the Court can assume it again, looking back at his history and characteristics. This is in his history and characteristics. But you said there's no history of revocation hearings. Correct. And, well, he's had history of violations of probation and parole. So he... Is there any indication in that history that he's ever been told that he had the right to present documents and witnesses and or cross-examine, generally speaking? In this record, no. Well, this is the only record we have, isn't it? We have to look at this record, do we not? Yes, Your Honor. And here's the additional evidence that the defendant was advised that he had this right to present additional evidence. His defense counsel is standing right next to him at the time that the defendant enters his admission. Well, this is something we see coming all the time. Defense counsel jumps up in front of a district court and says, we admit. And that's the end of that. And then turns around on appeal and says, well, you didn't give us our rights. I understand that. It looks like the district court got sandbagged. But that ain't our question, whether the district court got sandbagged. The question is, do we have anything that tells us this person knew these things? And I think you've told me the answer is no. Yes, that's correct. I've told you the answer is no. Is that the end of it? It's not in the record. Isn't that the end of it? No, Your Honor. I think looking at 32.1, what the district court judge does is he provides an opportunity for the defendant to be able to do these things. And he had that hearing. The United States position, I think, is not reflected correctly in the reply brief. In that, first, the United States position is that he had his hearing. He had the opportunity to present evidence. He had the opportunity to confront and cross-examine any witnesses that were there. He was before the district court judge. He had his hearing. So it wasn't a situation where he absolutely waived his right to a hearing. He was there. He presented the information. In fact, he presented information in mitigation. So he had his hearing. Now, as a fallback position in the alternative, yes, he was advised of this information. And for looking at a totality of the circumstances, with his counsel standing right at his side, it said that he was going to admit to the allegations. If we disagree with you that there's any basis to find that he had this information, if we disagree with you that this was the hearing, what do we do next? Is that an error that we review for harmlessness, or is that a kind of structural error? What is that? Well, Your Honor, the United States position is that it's a plain error review. And the reason being is that this issue was never raised with the district court judge. This is an issue of sour grapes. At the conclusion of the hearing, the defendant didn't like his sentence and on appeal is now saying, well, wait a minute, my admission was not voluntary. Well, what if it is plain error? What if we go back and we find that the error is plain? I'm still not sure what that means in terms of a result. Well, Your Honor, the question is, does it impact the fairness of the judicial proceedings? And in this instance, no. The defense hasn't even made a proffer as to what prejudice the defendant suffered as a result of the admission. The only prejudice which they've alleged or that they may be alleging is that he got too high of a sentence. It wasn't that he would not have admitted to the admission, and certainly there was sufficient evidence before the district court that the defendant had in fact violated his supervised release, not only in the modifications but also the six separate allegations that were made against the defendant, to which the defendant admitted only one, again providing evidence that the defendant had talked with his counsel about this information and was savvy enough to know I'm only wanting to enter an admission to one of these allegations. So with that, from a totality of the circumstances, the defendant had his hearing and was likely very well aware of what he had as far as his rights. How in the world can he raise it if he doesn't know about it? Excuse me? How in the world can he raise it if he doesn't know about it? Well, Your Honor, what he must be provided at the hearing is an opportunity to present this information, and he had that opportunity. How did he have it? He didn't know he had it. What he knew is that he had his counsel at his side and he had the opportunity for a hearing. And certainly at that point, again in a revocation situation, what's required by Rule 32.1 is that the defendant have an opportunity to present that information, and he had that opportunity. And in 32.1, there are specific references where the judges actually have to advise the defendant. And in this section, 32.1b, it doesn't discuss the need to advise the defendant of these rights. What it says is that the defendant must have an opportunity that is entitled to these rights. And he was entitled to those rights, and he had the opportunity to present that information. And specifically at 32.1a.3, it says that the defendant must be advised of certain information. In 32.1b, all it says is that he's entitled to these rights, not that the district court judge has to advise him of these rights. And that's exactly what he was entitled to, and he was presented that opportunity. Finally, regarding the sentence itself, the sentence that was imposed, the district court judge did not specifically address the guidelines. That's clear. But what the district court judge did, and as Judge Fletcher points out, is he had a familiarity with this defendant over the last, from 2002, to the time of the revocation proceedings. Less than three months after his release from custody, he again is violating his supervised release by testing positive and failing to test. Then over a period of time, he continues to violate, even after given an opportunity to have a modification. Your Honor, I see my time has expired. May I conclude? You may conclude. Thank you. Your Honor, looking at the entirety of this proceeding, the defendant was given an opportunity to come in and to have his hearing. What does he do? The first words out of defense counsel's mouth is that he was prepared to admit to the violation. Next, the district court judge advised him of the allegation to which he said he wished to admit, and the defendant said that I admit. Later on, he was given the opportunity to provide information. He did that. He was well aware of the proceedings. There's no issue regarding whether this was a knowing and voluntary entry of an admission. He was well aware of his rights. Regarding the sentence, the sentence itself, the district court judge was well aware of the defendant. He had had experience with the defendant. Without specifically going through the 3553A factors, it is implicit in his ruling. Are you summing up or are you going on with a further argument? Yeah, this sounds like a further argument. The longest summing up I've heard in a long time. Your time has expired. I think your briefing has set out your position on the other issues. Thank you, Your Honor. And nobody waives anything they don't talk about unless they do it explicitly. So, Ms. Farris, you do have some time left. And I would appreciate your addressing the argument that's been made by Mr. Alexander concerning Rule 32.1B, that it does not specifically require the district court to inform the person of certain things, but rather only that they are things the person is entitled to. The only one referring specifically to notice is notice of the right to retain counsel, which he had. So would you address that interpretive issue? Certainly. Well, as an initial matter, I think that that was waived by the government as it wasn't raised in their briefs. However, in United States v. Stocks, this Court stated that any waiver of the rights in Rule 32 must be knowing, intelligent, and voluntary. And in Boykin, the Supreme Court stated that courts must make sure an accused has a full understanding of what a plea connotes, and a court cannot presume a waiver is knowing and intelligent and voluntary from a silent record. So regardless of whether Rule 32 specifically states that an accused must be advised of those particular rights, in Stocks the Court has said that any waiver of those rights must be knowing, intelligent, and voluntary. And without a court advising a defendant of what those rights are, it's impossible for the court to determine that those rights were knowing. And without a defendant being advised of what those rights are, a defendant can't knowingly and intelligently waive those rights. If we were to agree with you, what is the result that should follow, in your opinion? Well, I think the Court should vacate his – the sentence imposed and also his admission and remand for further proceedings. I believe that a defendant can't waive – that harmless – or plain error, excuse me, shouldn't apply because Mr. Gibbs wasn't advised of what these rights were and therefore couldn't object to the failure to be advised of them. But in any event, I think that we can meet the plain error standard here. First of all, the error, I believe, was plain, and it affects substantial rights. Where's the prejudice? Well, the prejudice is the fact that he admitted to a violation. And in Arizona v. Fulminati, for example, the Supreme Court stated that a defendant's confession is the most probative and damaging evidence that can be admitted against an individual. He admitted – he admitted to this allegation, an allegation he may not have admitted to had he been advised of his rights. Moreover, it was – He had been advised of his rights. He had all this evidence to demonstrate he didn't commit a violation. Is that correct? Well, if you actually look at the only allegation he admitted was being terminated from the CCC. Was he? Well, the question isn't only whether he was terminated from the CCC, but that was not an original condition of his supervised release. It was something he had requested. And so he could have, for example, presented evidence that he didn't know being terminated from a condition he requested would have been qualified as a violation of supervised release. So I think there is other evidence. But his counsel was too incompetent to develop that line of thought, I take it. Well, that's not raised in this – Hmm? In this appeal. Excuse me? I said that's not – that clearly hasn't been raised in the appeal yet. So he had all this – he had this ability, and we can tell that from the rarity he could have put on all this stuff to show he really wasn't terminated from the CCC, but just decided to go ahead and plead out anyway. Is that right? Well, I'm not saying that there's evidence he wasn't terminated. What I'm saying is that he may not have admitted to that allegation. Well, that seems like the most easily provable of allegations. I mean, it isn't something that would require, you know, say proof of consorting with felons or something where there's questions about what it means. It seems like a really objective standard. Was he or was he not terminated from the program? Well, I think for it to be – first of all, I think they would have to bring in evidence that he was terminated, someone from the CCC under some of the other – this court's case line, in cases like Comito and the like, but also show that he understood what the condition was. Or an authenticated record of the document would do it. Perhaps that's another appeal. Another issue entirely. In real life, it looks like a tactical decision, and then a lawyer goes on to try to get treatment for him again. Well, whether it's a tactical decision or not, I think the court, the district court has a responsibility before accepting an admission to advise the defendant what his or her rights are. And the court didn't do that here. And that – the court's failure to follow the rules and the statutes continue throughout these proceedings. Thank you, counsel. The case just argued is submitted. We appreciate the arguments of both parties.
judges: B. Fletcher, Fernandez, Graber